1UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
Ocala Division

**ERNIE HUNT and DENISE HUNT,**

    Plaintiffs,

v.                                Case No. 5:21-cv-00359-BJD-PRL

**WELLS FARGO BANK, N.A.,** a national banking association,

    Defendant.
_____

**<u>AMENDED COMPLAINT</u>**

COMES NOW the Plaintiffs, ERNIE HUNT, an individual, and DENISE HUNT, an individual, (collectively the "Plaintiffs') by and through their undersigned counsel, and sue Defendant, WELLS FARGO BANK, N.A., a national banking association ("Defendant"), and as grounds therefore state:

1. This is an action seeking damages in excess of Seventy-five Thousand Dollars ($75,000) exclusive of attorney's fees, interest and costs.

2. At all times material hereto, Plaintiffs were residents of Florida.

3. Plaintiffs are a married couple.

4. Defendant is a national banking institution chartered and supervised by the Office of the Comptroller of the Currency (ICC) and conducts business across the State of Florida to provide financial services on a global basis. Defendant maintains its principal place of business in North Carolina. At all times relevant hereto,

Defendant operated, conducted, engaged, and otherwise carried on a business venture in Lake County, Florida.

5. Jurisdiction is proper in the United States District Court Middle District of Florida, Ocala Division, because this is a dispute between citizens of different states with an amount in controversy that is more than Seventy-five Thousand Dollars ($75,000).

6. All conditions precedent required prior to bringing this action have been met or waived by Defendant.

## FACTUAL ALLEGATIONS

7. In entering a long-term banking relationship with Defendant, Plaintiffs relied upon the name and stature of Defendant, believing that Defendant had in place security operations and procedures which would safeguard their hard-earned money.

8. In 2020, Plaintiffs made the decision to purchase real estate in St. Johns County, Florida.

9. On November 23, 2020, Ernie Hunt received an email from someone who purported to be Plaintiffs' closing agent, requesting that Plaintiffs wire the funds required to close on the subject property (the "Fraudulent E-Mail").

10. The Fraudulent E-Mail was not from Plaintiffs' closing agent but was from an unknown criminal third-party.

11. Plaintiffs reasonably believed the Fraudulent E-Mail was from their closing agent.

12. Unknown to Plaintiffs, the Fraudulent E-Mail provided the wrong wiring instructions, and stated that funds must be wired on November 25, 2020.

13. Plaintiffs traveled to Defendant's Clermont branch office to request assistance with the wire transfer.

14. One of Defendant's employees assisted Plaintiffs with the wire transfer.

15. Plaintiffs showed Defendant's employee the Fraudulent E-Mail containing the wire instructions.

16. Defendant's employee who handled the wire transfer failed to verify the recipient's account.

17. Specifically, Defendant failed to call the closing agent or make any other efforts to do so.

18. Defendant's employee did not have any supervisor approve the authorization in the client's presence.

19. The failure to confirm the wire instructions and failure to obtain approval from supervisors violated Defendant's policies concerning wire transfers.

20. A management level employee of Defendant admitted that it violated the policies concerning wire transfers.

21. Defendant's actions violated Defendant's policies on wire transfers.

22. If Defendant had followed its own procedures, Defendant would have immediately discovered the Fraudulent E-Mail contained the incorrect wiring instructions, and Plaintiffs would not have proceeded with the transactions.

23. Defendant's procedures exist to prevent this exact type of fraud.

24. $528,359.20 was wired by Defendant to a third-party bank as requested by the Fraudulent E-Mail.

25. Plaintiffs were not aware of the fraud until they attended the closing for the residence on November 30, 2020.

26. At this closing, the closing agent informed Plaintiffs that the closing agent had not received the funds and that the closing agent does not bank where the funds had been wired by Defendant.

27. Plaintiffs showed their closing agent the Fraudulent E-Mail, who informed them that it was not from closing agent's office.

28. On November 30, 2020, Plaintiffs promptly notified Defendant of the discovered fraud and requested assistance in stopping the fraud.

29. $233,476.43 of the funds were recovered and returned to Plaintiffs.

30. Plaintiffs have lost $294,882.77 as a result of the November 23, 2020 wire transfer.

## Count One
*(Breach of Implied Duty of Good Faith and Fair Dealing)*

31. Plaintiffs reallege paragraphs 1 through 30 above as if fully set forth herein.

32. Upon information and belief, Plaintiffs were subject to the terms and conditions of the Treasury Services Terms and Conditions ("T&C"), which Defendant contends is a binding agreement between Defendant and Plaintiffs as to every provision therein contained.

33. Plaintiffs do not possess a copy of the T&C. Plaintiffs have requested a copy of the T&C from Wells Fargo, but it has not yet been produced.

34. The T&C, prepared entirely by Defendant, is an agreement used throughout the banking industry, and Plaintiffs had no meaningful ability or power to change any of the terms, conditions, or provisions of such agreement.

35. At all times relevant hereto, there existed an implied covenant of good faith and fair dealing, where Defendant impliedly promised and represented to Plaintiffs that it would not do anything which would deprive Plaintiffs of the benefits of the contractual and statutory relationship between Plaintiffs and Defendant. This duty includes a duty to do everything the T&C requires, including a reasonable expectation to protect the security of Plaintiffs' money on deposit with Defendant.

36. By proceeding with the fraudulent wire transfer and Defendant's failure to act appropriately in making the transfer while not following its own policies as outlined in the T&C, Defendant breached the T&C.

37. By proceeding with the fraudulent wire transfer in violation of its own policies and the policies stated in the T&C, Defendant breached the implied covenant of good faith and fair dealing that existed between Plaintiffs and Defendant by virtue of their banking relationship, and as existed in the T&C between the parties

38. As a direct and proximate result of such breach of the T&C and the implied covenant of good faith and fair dealing, Plaintiffs have suffered damages in the amount of $294,882.77, plus interest.

WHEREFORE, Plaintiffs respectfully demand judgment for damages against Defendant together with post judgment interest and costs, along with any further relief this Court deems just and proper.

## Count Two
*(Breach of Statutory Duty)*

39. Plaintiffs reallege paragraphs 1 through 30 above as if fully set forth herein.

40. Florida Statutes Section 674.406 imposes upon Defendant the duty to exercise ordinary care and to act in good faith when paying items.

41. Florida Statutes Section 674.406 further imposes the duty on Plaintiffs to discover and report unauthorized items with reasonable promptness.

42. Plaintiffs exercised reasonable promptness in notifying Defendant of the fraudulent wire transfer.

43. Plaintiffs notified the bank promptly within the time that they reasonably could have discovered the unauthorized payment.

44. In fact, Plaintiffs notified Defendant within the same day of becoming aware of the fraudulent transaction.

45. In making the fraudulent wire transfer, Defendant breached its statutory duty by failing exercise ordinary due care, by failing to implement required safeguards and by failing to follow safeguards it had in place, and those failures substantially contributed to the loss suffered by Plaintiffs.

46. In facilitating the fraudulent wire transfer, Defendant breached its statutory duty by failing to act in good faith, as they knew or should have known that the Fraudulent E-Mail was in fact a fraudulent email.

47. Until November 30, 2020, Plaintiffs could not have known of the fraud.

48. Furthermore, Defendant failed to act in good faith when it failed to follow its own T&C when it made the transfer without following its own internal rules.

49. As a direct and proximate result of Defendant's failure to use ordinary care and its bad faith in making the transfer, Plaintiffs have been damaged.

50. Plaintiffs has retained the undersigned attorney and has agreed to pay a reasonable fee.

WHEREFORE, Plaintiffs respectfully demand judgment for damages against Defendant, together with post judgment interest and costs, along with any further relief this Court deems just and proper.

## Count Three
*(Breach of Fiduciary Duty)*

51. Plaintiffs reallege paragraphs 1 through 30 above as if fully set forth herein.

52. As a bank holding Plaintiffs' accounts, Defendant had a fiduciary obligation to always act in the interest of Plaintiffs and in good faith.

53. None of the funds held in Plaintiffs' account belonged to or were the property of Defendant, whose duty was to safeguard the funds and only disburse them

after following Defendant's guidelines and protocols to ensure the funds were not lost to fraud, in accordance with their T&C.

54. Defendant is familiar with the type of fraudulent scheme contained in the Fraudulent E-Mail.

55. Defendant has a duty to detect fraud and implement strategies to ensure clients are not defrauded through known schemes.

56. In this case, a scheme known to Defendant was used to defraud a client out of money due to Defendant's ineffective fraud prevention practices and failure to follow existing fraud prevention practices.

57. Defendant knew third parties will penetrate customers or customer's agents' e-mails, including the infiltration of viruses used to gain access to customer's information.

58. Defendant failed to inform Plaintiffs of specific security procedures they needed to undertake to prevent fraudulent wire transfers.

59. By Defendant's failure to inform Plaintiffs of the dangers, without having secured proper and appropriate proof of where the funds were to be transferred, Defendant knowingly participated in the fiduciary breaches set forth above.

60. Defendant has therefore intentionally and knowingly acted against Plaintiffs' interests.

61. Defendant, due to its inaction, wrongdoing, willful conduct, and such other reasons as have been described above, or may be inferred from the foregoing allegations, breached its fiduciary duties to Plaintiffs, and as a direct and proximate

result of such wrongdoing, Plaintiffs have been damaged thereby, in the amount of $294,882.77, plus interest.

WHEREFORE, Plaintiffs respectfully demand judgment for damages against Defendant together with post judgment interest and costs, along with any further relief this Court deems just and proper.

### Count Four
*(Negligence)*

62. Plaintiffs reallege paragraphs 1 through 30 above as if fully set forth herein.

63. Plaintiffs opened their account with Defendant and deposited large sums of money, entrusting same to Defendant's care and handling.

64. Plaintiffs performed all obligations, conditions and agreements imposed by any agreement entered into with Defendant.

65. Following discovery of the fraudulent wire transfer, Plaintiffs immediately notified Defendant that the wire transfer request was fraudulent.

66. At all times herein mentioned, Defendant owed the following duties, among others, to its depositors in connection with the wire transfer of funds to a third party, including Plaintiff:

    a)    To reasonably protect the funds on deposit of the customer;

    b)    To establish commercially reasonable and adequate security procedures;

    c)    To reasonably prevent the occurrence of fraudulent activity;

d) To have in place and faithfully implement Defendant's own internal security policies, practices, and procedures to verify and authenticate wire transfer requests from one account to another;

e) To adequately train, educate and continue to train, educate, and supervise bank personnel in security policies, practices, and procedures, and those commercially reasonable security policies, practices, and procedures customarily used in the banking industry, including the prevention of the fraudulent wire transfer requests;

f) To be vigilant in the protection of customer money from the risk of fraud which is well known to Defendant;

g) To require approval by Defendant's manager of a wire transfer of this size to ensure Defendant's regulations were being followed;

h) To speak with the person or entity receiving the funds to ensure that the funds are not being taken as part of a scam;

i) To contact the bank to which the funds are being transferred, in this case Chase Bank, to ensure that the monies are being transferred to the account to which they were intended; and

j) To follow all safety protocols to ensure client monies are not stolen.

67. Defendant breached its duty to Plaintiffs to protect and safeguard their money by failing to comply with duties alleged in paragraph 56.

68. As a direct and proximate result of Defendant's negligence, Plaintiff has been damaged in the amount of $294,882.77, plus interest.

WHEREFORE, Plaintiffs respectfully demand judgment for damages against the Defendant, together with post judgment interest and costs along with any further relief this Court deems just and proper.

### Count Five
*(Noncompliance with Security Procedures in Violation of Fla. Stat. §670.202(2))*

69.     Plaintiffs reallege paragraphs 1 through 30 above as if fully set forth herein.

70.     Upon information and belief, Defendant and Plaintiffs had a security procedure established for the purpose of (a) verifying that a payment order or communication amending or canceling a payment order is that of Plaintiffs' and (b) detecting error in the transmission or the content of the payment order or communication, as set forth and defined by Florida Statute Section 670. 201.

71.     Upon information and belief, Plaintiffs were subject to the terms and conditions of the Treasury Services Terms and Conditions ("T&C"), which Defendant contends is a binding agreement between Defendant and Plaintiffs as to every provision therein contained.

72.     Plaintiffs do not possess a copy of the T&C. Plaintiffs have requested a copy of the T&C from Wells Fargo, but it has not yet been produced.

73.     Upon information and belief, the T&C required Defendant and its agents to take precautions which would detect the possibility of fraud in wire transfer instructions.  *See* Fla. Stat. § 670.202(2).

74. Upon information and belief, Plaintiffs and Defendant had an agreement, the T&C, which is an agreement prepared entirely by Defendant, used throughout the banking industry, and Plaintiffs had no meaningful ability or power to change any of the terms, conditions, or provisions of such agreement.

75. Upon information and belief, the T&C required affirmative action by Defendant and its agents to follow security procedures which would detect fraudulent transfers.

76. Defendant failed to comply with the security procedures in good faith, as required by Florida Statute Section 670.202(2) and by the T&C when it failed to notify Plaintiffs of the fraudulent wire transfer.

77. The wire transfer was not authorized by Plaintiffs due to Defendant's failure to act reasonably in relation to the T&C and the security procedures contained therein.

78. Defendant failed to accept the payment order in good faith and in compliance with the security procedures or any written agreement or instruction of Plaintiffs, as is evidenced by Defendant's failure to confirm the wire instructions and failure to obtain approval from supervisors in violation of Defendant's policies concerning wire transfers.

79. Plaintiffs were harmed as a result of Defendant's failure to comply with the security procedures.

80. The harm Plaintiffs have incurred includes, but is not limited to, actual loss of the sum of $294,882.77.

81. Plaintiffs are entitled to recovery and refund from Defendant of the unauthorized payment order in the amount of $294,882.77, with interest, pursuant to Fla. Stat. § 670.204.

WHEREFORE Plaintiffs, ERNIE HUNT and DENISE HUNT, respectfully request this Honorable Court enter its Judgment against Defendant, WELLS FARGO BANK, N.A., awarding Plaintiffs damages, interest, costs, and any other relief this Court deems just, equitable, and proper.

## Count Six
*(Failure to Maintain Commercially Reasonable Security Procedures in Violation of Fla. Stat. § 670.202(3))*

82. Plaintiffs reallege paragraphs 1 through 30 above as if fully set forth herein.

83. Defendant failed to maintain a commercially reasonable method of providing security against unauthorized payment orders. *See* Fla. Stat. § 670.202(3).

84. Upon information and belief, Defendant and Plaintiffs had a security procedure established for the purpose of (a) verifying that a payment order or communication amending or cancelling a payment order is that of Plaintiffs' and (b) detecting error in the transmission or the content of the payment order or communication, as defined by Florida Statute Section 670.201.

85. Plaintiffs do not possess a copy of the T&C. Plaintiffs have requested a copy of the T&C from Wells Fargo, but it has not yet been produced.

86. The security procedures Defendant had in place, likely contained in the T&C, were not commercially reasonable according to Florida Statute Section 670.202(3).

87. The T&C prepared entirely by Defendant is an agreement used throughout the banking industry, and Plaintiffs had no meaningful ability or power to change any of the terms, conditions, or provisions of such agreement.

88. Plaintiffs were long time clients of Defendant who possessed the knowledge relating to the size, type, and frequency of payment orders normally issued by Plaintiff to Defendant. *See* Fla. Stat. § 670.202(3).

89. Upon information and belief, the security procedures required the use of algorithms or other codes, identifying works or numbers, encryption, callback procedures, *or* similar security devices. *See* Fla. Stat. § 670.201 (emphasis added).

90. Upon information and belief, Plaintiffs did not refuse a security procedure that was commercially reasonable for Plaintiffs. *See* Fla. Stat. § 670.202(3)(a).

91. Upon information and belief, Plaintiffs did not expressly agree in writing to be bound by any payment order, whether or not authorized, issued in their names and accepted by the bank in compliance with the security procedures chosen by Plaintiffs. *See* Fla. Stat. § 670.202(3)(b).

92. Plaintiffs were harmed as a result of Defendant's acts and omissions in violation of Florida Statute Section 670.202(3).

93. The harm Plaintiffs have incurred includes, but is not limited to, actual loss of the sum of $294,882.77.

94. Plaintiffs are entitled to recovery and refund from Defendant of the unauthorized payment order in the amount of $294,882.77 with interest, pursuant to Florida Statute Section 670.204.

WHEREFORE Plaintiffs, ERNIE HUNT and DENISE HUNT, respectfully request this Honorable Court enter its Judgment against Defendant, WELLS FARGO BANK, N.A., awarding Plaintiffs damages, interest, costs, and any other relief this Court deems just.

**Count Seven**
*(Failure to Refund Payment with Interest in Violation of Fla. Stat. § 670.204)*

95. Plaintiffs reallege paragraphs 1 through 30 above as if fully set forth herein.

96. Plaintiffs became aware of the fraudulent wire transfer on November 30, 2020.

97. Plaintiffs made Defendant aware of the fraudulent transfer on November 30, 2020, which is a reasonable time according to Florida Statute Section 670.204(1).

98. Plaintiffs are entitled to recovery and refund from Defendant of the unauthorized payment order in the amount of $294,882.77 with interest, pursuant to Florida Statute Section 670.204.

WHEREFORE Plaintiffs, ERNIE HUNT and DENISE HUNT, respectfully request this Honorable Court enter its Judgment against Defendant, WELLS FARGO

BANK, N.A., awarding Plaintiffs damages, interest, costs, and any other relief this Court deems just.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury of all issues triable by law.

          **WOOLSEY MORCOM, PLLC**
By: */s/ Nicholas W. Morcom, Esq.*
     **NICHOLAS W. MORCOM, ESQ.**
     Florida Bar No. 013767
     203 Fort Wade Road, Suite 105
     Ponte Vedra, FL 32081
     (904) 638-4235 (telephone)
     (904) 638-9302 (facsimile)
     Email: nick@woolseymorcom.com
     Secondary: heather@woolseymorcom.com

*Attorney for Plaintiffs*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 20th day of September 2021, a true and correct copy of the foregoing document was filed electronically and was sent by e-mail from the CM/ECF Portal system, unless otherwise noted below, on all counsel or parties of record listed below:

    Andrew D. Atkins, Esq.
    TROUTMAN PEPPER HAMILTON SANDERS, LLP
    301 South College Street, 34th Floor
    Charlotte, NC 28202
    Andrew.atkins@troutman.com

                    */s/Nicholas W. Morcom*
                        Attorney